UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| WILCOX EXCAVATION & DEVELOPMENT LLC d/b/a WE DIG DEVELOPMENT and WE DIG EXCAVATION and WE DIG INDUSTRIAL,<br>  Plaintiff,<br><br>v.<br><br>DIGREGORIO, INC.; and WE DIG INVESTMENTS, LLC,<br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 1:23-cv-00543-MSM-PAS |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the Motion for Summary Judgment and Request for Exceptional Case Determination (ECF No. 35) of defendants DiGregorio, Inc. ("DiGregorio") and We Dig Investments, LLC ("WDI") (collectively, "Defendants"). Plaintiff Wilcox Excavation & Development, LLC d/b/a WE DIG DEVELOPMENT, and WE DIG EXCAVATION and WE DIG INDUSTRIAL ("Wilcox") sued Defendants alleging trademark infringement and related claims. (ECF No. 1.) For the following reasons, the Court GRANTS Defendants' Motion for Summary Judgment but DENIES its Request for Exceptional Case Determination.

      I.  BACKGROUND

Wilcox is a small Rhode Island-based excavation company that was organized in 1990. (ECF No. 44-1 at 3.) Wilcox registered the word mark "WE DIG" with the

United States Patent and Trademark Office on July 25, 2016, under Registration No. 5464360, for use in connection with excavation and construction services. (ECF No. 1-1 at 1.) Wilcox also registered a design mark of a stylized rendering of the words "WE DIG" under Registration No. 4706802. (ECF No. 1-2 at 1.)

DiGregorio is a larger Rhode Island-based excavation company, owned solely by Enrico DiGregorio. (ECF No. 44-3 at 5–6.) DiGregorio has offered excavation services under the name "DiGregorio" for the past 30 years. (ECF No. 38 ¶ 6.)[1] DiGregorio has never directly used "We Dig" as a nickname, in marketing of goods or services, or otherwise in connection with excavation services. *Id.* ¶¶ 14–18. Wilcox has alleged no instances in which DiGregorio bid on the same job as Wilcox or was confused with Wilcox. *Id.* ¶¶ 13, 17.

Four members of the DiGregorio family, including Enrico, formed WDI in 2017. *Id.* ¶ 19. WDI invests, *inter alia*, in real estate ventures. *Id.* ¶¶ 19, 24. WDI has no employees and does not itself offer or provide excavation services or bid on construction work. *Id.* ¶¶ 25–28. WDI does not advertise or promote the name "We Dig Investments" apart from some sweatshirts and jackets and a LinkedIn page that bears its corporate logo. *Id.* ¶ 32; ECF No. 47 at 4. When needed, WDI hires other contractors to perform site work on its projects. (ECF No. 38 ¶ 29.) There is no

---

[1] Wilcox did not respond to Defendants' Statement of Undisputed Facts. To the extent that Wilcox has not elsewhere "expressly denied or otherwise controverted" a fact within that Statement, the Court treats it as admitted. LR Cv 56(a)(3) ("For purposes of a motion for summary judgment, any fact alleged in the movant's Statement of Undisputed Facts shall be deemed admitted unless expressly denied or otherwise controverted by a party objecting to the motion.").

ownership relationship between DiGregorio and WDI. *Id.* ¶ 24. The extent to which WDI may have enlisted DiGregorio to collaborate on real estate development work is disputed. *See* ECF No. 47 at 4–6.

Wilcox's Complaint alleges that Defendants violated Wilcox's trademarks by providing construction and excavation services in Rhode Island. (ECF No. 1 ¶¶ 22–31.) Wilcox asserts four related claims against Defendants: statutory trademark infringement (Count I), common-law trademark infringement (Count II), federal unfair competition in violation of the Lanham Act (Count III), and common law unfair competition (Count IV). *Id.* ¶¶ 38–67. Wilcox seeks, *inter alia*, disgorgement of Defendants' profits and damages for alleged reduction in its brand value. (ECF No. 37-11 at 3.)

In support of their Motion for Summary Judgment (ECF No. 35), Defendants argue that all of Wilcox's claims fail for lack of sufficient, admissible evidence. (ECF No. 36 at 5–14.) Defendants' core contention is that DiGregorio and WDI are distinct entities whose commercial activity cannot be combined to support liability for trademark infringement. *Id.*; *see also* ECF No. 46 at 5. Defendants further argue that they are entitled to summary judgment because, they allege, Wilcox has failed to establish any actual injury or damages, including by failing to secure expert testimony on these issues. Defendants also request the Court declare this case exceptional, pursuant to 15 U.S.C. § 1117, to permit an award of attorney's fees against Wilcox, based primarily on the alleged unreasonableness of some of Wilcox's

3

claims and on its attempts to depose Defendants' counsel. (ECF Nos. 35; 36 at 17–19.)

## II. STANDARD OF REVIEW

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug Inc.,* 895 F.2d 46, 50 (1st Cir. 1990) (quoting Adv. Comm. Notes to Fed. R. Civ. P. 56). Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000) (quoting *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the Court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club,* 218 F.3d 1, 5 (1st Cir. 2000) (citing *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 672 (1st Cir. 1996)). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I,* 53 F.3d

4

454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. . . . If the evidence presented 'is subject to conflicting interpretations, or reasonable [people] might differ as to its significance, summary judgment is improper.'" *Gannon v. Narragansett Elec. Co.,* 777 F. Supp. 167, 169 (D.R.I. 1991 (citing and partially quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure,* § 2725, at 104 (1983)).

### III.  DISCUSSION

To succeed on a claim of trademark infringement, a plaintiff must establish (1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion. *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006); *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1st Cir. 2008). This test applies to all four Counts of Wilcox's Complaint. *See Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 14–15 (1st Cir. 2004) ("The same likelihood of confusion requirement applies to [a plaintiff's] claims under Rhode Island common law for unfair competition and service mark infringement."); *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 61 n. 6 (1st Cir. 2008) ("Venture's unfair competition claim . . . and false designation claim . . . are subject to the same legal standard—namely, 'likelihood of confusion'—as its Count 1 infringement claim"); *Sequin, LLC v. Renk*, No. CV 20-62WES, 2020 WL 5995205, at *9 (D.R.I. Oct. 2, 2020) (noting that, in Rhode Island common law unfair competition claims, "[a] Rhode Island state court applies [the] Lanham Act") (citing

5

*Greater Westerly-Pawcatuck Area Chamber of Commerce v. S. Kingstown Chamber of Com., Inc.*, No. WB-11-0741, 2011 WL 7072123, at *4 (R.I. Super. Ct. Jan. 1, 2011)).

As "[t]he purpose of trademark laws is to prevent the use of the same or similar marks in a way that confuses the public about the actual source of the goods or service," *Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 9 (1st Cir. 1996), proving that a defendant is actually using plaintiff's trademark in commerce is a threshold burden for claims of trademark infringement. 15 U.S.C. § 1114 (predicating liability on "use in commerce"); *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 60 (1st Cir. 2008) (to establish trademark infringement, a plaintiff is required to prove, *inter alia*, that defendant's use of plaintiff's marks likely confused consumers, thereby causing plaintiff harm (e.g., lost sales)); *see also Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc.*, 704 F.3d 44, 53 (1st Cir. 2013) (plaintiff must meet "its responsibility to show infringement by demonstrating that the defendant's use of its mark is likely to confuse customers").

Defendants do not dispute that Wilcox's design mark and word mark are entitled to protection. *See* ECF No. 36 at 5–14. However, Wilcox presents no evidence and makes no substantive argument that the design mark was used by Defendants. *See* ECF Nos. 37-1 at 13; 42. As such, to the extent that Wilcox's Complaint claims Defendants infringed upon the design mark, summary judgment is warranted against such claims.

Wilcox also presents no admissible evidence suggesting that its word mark was used directly by DiGregorio. *See* ECF No. 37-1 at 32. Wilcox instead seeks to connect

6

DiGregorio to the words "We Dig" through its alleged affiliation with WDI.  But "it is long settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations." *Dewberry Group, Inc. v. Dewberry Engineers Inc.*, 604 U.S. 321, 327 (2025) (quoting *Agency for Int'l Development v. Alliance for Open Soc'y Int'l Inc.*, 591 U.S. 430, 435 (2020)).  "And that is so even if the entities are affiliated—as they are here by virtue of having a common owner."  *Id.*

Thus, the extent to which WDI used the words "We Dig" cannot be imputed to DiGregorio based solely on any affiliation between WDI and DiGregorio.  And while "[a] court may in select circumstances 'pierc[e] the corporate veil,' especially to prevent corporate formalities from shielding fraudulent conduct," *id.* (quoting *United States v. Bestfoods*, 524 U.S. 51, 62 (1998)), Wilcox does not attempt to make the requisite showing or otherwise advance a theory of liability that would make DiGregorio liable for WDI's use of the words "We Dig."  As such, because Wilcox has not produced evidence such that a reasonable jury could find that DiGregorio itself used the words "We Dig" in commerce, summary judgment for Wilcox's claims against DiGregorio is appropriate.

The remaining question with respect to Wilcox's claims is whether WDI's use of the words "We Dig" can be found to have been "likely to cause consumer confusion." *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006). "Likely confusion" means "more than the theoretical possibility of confusion." *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1st Cir. 2008) (quoting

7

*Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Winship Green Nursing Ctr.*, 103 F.3d 196, 200 (1st Cir.1996)). The allegedly infringing conduct must create "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Id.* (quoting *Winship Green Nursing Ctr.*, 103 F.3d at 201).

The First Circuit generally applies an eight-factor test to evaluate the likelihood of confusion in trademark cases. *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 10 (1st Cir. 2012). These factors are:

> [1] the similarity of the marks; [2] the similarity of the goods [and services]; [3] the relationship between the parties' channels of trade; [4] the relationship between the parties' advertising; [5] the classes of prospective purchasers; [6] evidence of actual confusion; [7] the defendant's intent in adopting its mark; [8] and the strength of the plaintiff's mark.

*Id.* (citing *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981)). "No one factor is necessarily determinative, but each must be considered." *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir. 1987). The Court addresses each factor in turn.

The first factor, the similarity of the marks, "is determined on the basis of the total effect of the designation, rather than a comparison of individual features." *Boston Duck Tours*, 531 F.3d at 29 (quoting *Pignons*, 657 F.2d at 487). In the present case, the comparison to be drawn is between Wilcox's word mark "WE DIG" and "We Dig Investments, LLC." While Defendants argues that the "total effect" of the marks is dissimilarity as a matter of law, the Court fails to see how this is so. The fact that "We Dig" is used as part of a longer business name is not enough to overcome its

8

obvious similarity to Wilcox's "WE DIG" word mark. As such, the first factor weighs in favor of Wilcox.

The second factor, the similarity of the goods and services, is the factor perhaps most at issue in this case given the distinction between WDI (which does not itself engage in excavation services or bid on construction work) and DiGregorio (which does). Wilcox asserts that both DiGregorio and WDI engage in residential construction activities under the "We Dig Investments" name. (ECF No. 42 at 10–11.) In support of this assertion, Wilcox cites evidence it purports establishes WDI's involvement in residential real estate projects in Rhode Island. (ECF Nos. 42 at 10–11; 43 ¶¶ 8, 9, 12–16.) Defendants dispute the admissibility and materiality of this evidence. (ECF Nos. 46 at 10–11; 47 at 3–6.)

Even if the evidence cited by Wilcox were admissible, the Court agrees with Defendants that it would not sway this factor in favor of Wilcox. Viewed in the light most favorable to Wilcox, this evidence would suggest that, on two or three occasions, WDI may have engaged DiGregorio to perform excavation or construction work as part of WDI's real estate development projects. But as Defendants note, because "WDI has to contract for the same types of services Wilcox provides, that shows clearly that the companies do not offer similar services." (ECF No. 46 at 11.) Wilcox presents no viable legal theory as to why the Court should impute DiGregorio's excavation services to WDI, other than conclusory assertions that the two companies engaged in "collaboration" on residential projects. As such, this factor weighs in favor of Defendants.

9

The third, fourth, and fifth factors—channels of trade, advertising, and classes of prospective purchasers— "are often considered together because they tend to be interrelated." *Beacon*, 376 F.3d at 19. Having already established that WDI, as an investment company, is legally distinct from DiGregorio, these factors all weigh in favor of Defendants: WDI's channel of trade is real estate and other investment-type business ventures, it does not meaningfully advertise, and Wilcox fails to identify how WDI's "prospective purchasers," rather than DiGregorio's, would be similar to Wilcox's. *See* ECF Nos. 42 at 12; 46 at 12.

The sixth factor, evidence of actual confusion, requires that cited confusion be "commercially relevant," such that "the alleged infringer's use of the mark 'could inflict commercial injury in the form of . . . a diversion of sales, damage to goodwill, or loss of control over reputation' on the trademark holder." *Beacon*, 376 F.3d at 15 (quoting *The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 963 (2d Cir. 1996)). This factor is "often deemed the best evidence of possible future confusion" that would support a claim for trademark infringement. *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir. 2006). "While a showing of actual confusion is not required to establish infringement, an absence of actual confusion, or a negligible amount of it, between two products after a long period of coexistence on the market is highly probative in showing that little likelihood of confusion exists." *Aktiebolaget Electrolux v. Armatron Intern., Inc.*, 999 F.2d 1, 4 (1st Cir. 1993); *see also Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 121 (1st Cir. 2006) ("Historically, we have attached substantial weight to a trademark holder's failure to prove actual

confusion" where "the relevant products have coexisted on the market for a long period of time.").

Here, Wilcox alleges three instances of actual confusion between itself and WDI during their eight years of co-existence:

> (1) a Dig Safe ticket incident where Wilcox began excavation work on a project mistakenly attributed to We Dig Investments, LLC; (2) an incident where Milton CAT, a heavy equipment dealer, mistakenly placed parts for an excavator ordered by We Dig Investments in a bin for pickup by Wilcox (and charged Wilcox for the parts); and (3) an invoice . . . issued to Wilcox under the name "We Dig Excavation" for goods intended for We Dig Investments, LLC's Jamestown project.

(ECF No. 43 ¶ 17.) But even when viewed in the light most favorable to Wilcox, incidents seem unlikely to, individually or collectively, have resulted in a diversion of Wilcox's sales, damage to its goodwill, or a loss of control over its reputation. Wilcox presents sparse evidence to substantiate these claims, none of which appear to involve a consumer or other individual whose confusion could result in meaningful damage to Wilcox's business reputation. Ultimately, these three alleged incidents constitute a "negligible amount of [confusion]," *Aktiebolaget*, 999 F.2d at 4, such that this factor weighs in favor of Defendants.

The seventh factor, intent in adopting the mark, requires evaluation of both a defendant's explanation for its alleged infringing conduct and any evidence supplied by the plaintiff that might rebut that explanation. *See Pignons*, 657 F.2d at 491. Generally, "this factor usually matters only where an alleged infringer copied a mark in bad faith; a converse finding of good faith carries 'little weight.'" *Beacon*, 376 F.3d at 19 (quoting *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 44 (1st Cir. 1998));

11

*see also Star Fin. Services, Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 11 (1st Cir. 1996) ("Evidence of bad intent, however, while potentially probative of likelihood of confusion, is simply not required in a trademark infringement case; moreover, 'a finding of good faith is no answer if likelihood of confusion is otherwise established.'") (quoting *President and Trustees of Colby College v. Colby Coll.–New Hampshire,* 508 F.2d 804, 811–12 (1st Cir. 1975)).

Defendants provide uncontroverted testimony that the DiGregorio family searched Secretary of State records to ensure the "We Dig Investments" name was available, and that they chose the name for both its similarity to a shortened version of the name "DiGregorio" and as a play on words. (ECF No. 38 ¶¶ 21, 22.) Wilcox's suggestion that Defendants' failure to respond to some of its pre-litigation correspondence "suggests that the companies had something to hide," (ECF No. 42 at 14), is a conclusory allegation unsupported by any actual evidence. This factor as such weighs in Defendants' favor, though in keeping with *Beacon* and *I.P. Lund* this finding carries "little weight."

The eighth factor, the strength of the plaintiff's mark, is assessed by measuring "the length of time the mark has been used, its renown in the plaintiff's field of business, and the plaintiff's actions to promote the mark." *Star Financial*, 89 F.3d at 11. Defendants appear to acknowledge that the length of time Wilcox has used the mark weighs in favor of the strength of its mark but do not otherwise directly address this factor. (ECF No. 36 at 9 n.2.) Wilcox, on the other hand, asserts that its mark has "significant recognition in Rhode Island's excavation and development industry"

but does not present evidence that supports this assertion and does not identify any actions it has taken to promote the mark. (ECF No. 42 at 15.)[2] As such, while this factor does weigh in Wilcox's favor, it does so only weakly, based solely on the length of time Wilcox used its mark.

In summary, while the first and eighth *Pignons* factors weigh in favor of Wilcox, the other six factors—including the particularly important sixth factor—all weigh in favor of Defendants. In other words, although Wilcox is correct that the use of "We Dig" by WDI is similar to its own word mark, and although its word mark has been used for enough time to be considered "strong," it has produced only negligible evidence of actual confusion with WDI and has not otherwise demonstrated any likelihood that WDI's use of the words "We Dig" in its own investment and development business will be meaningfully confused with Wilcox's own use of the words "WE DIG" in its excavation and site work business. Under these facts, no reasonable jury could find that Wilcox could prevail on its trademark infringement claim against WDI. As such, because all of Wilcox's statutory and common-law claims follow the same legal analysis, summary judgment is warranted against all four Counts of Wilcox's Complaint.[3]

---

[2] While Wilcox in its Statement of Undisputed Facts claims that its mark "is prominently used in Wilcox's branding, advertising, and customer interactions," the deposition testimony it cites in support of this assertion refers only to the aforementioned confusion involving Dig Safe, and makes no mention of any branding, advertising, or customer interactions. *See* ECF Nos. 43 ¶ 4; 44 at 8.

[3] As the Court has determined summary judgment to be warranted for the foregoing reasons, it need not reach the merits of Defendants' argument with respect to Wilcox's failure to produce evidence of actual harm or damages.

The remaining issue is Defendants' request that the Court declare this case exceptional, pursuant to 15 U.S.C. § 1117, to permit an award of attorney's fees against Wilcox. (ECF No. 46 at 17–19.) In *Scholz v. Goudreau*, the First Circuit applied the Supreme Court's test for exceptional case determination under the Patent Act to trademark cases. 901 F.3d 37, 49 (1st Cir. 2018) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 552–54 (2014)). Under that test, exceptional case determination is to be made by a trial courts "in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* (quoting *Octane Fitness*, 572 U.S. at 554). Specific factors to be evaluated include "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to avoid considerations of compensation and deterrence." *Id.* at 50 (quoting *Octane Fitness*, 572 U.S. at 554 n.6).

Defendants cite as examples of Wilcox's allegedly objectively unreasonable conduct the following: (1) "[b]ringing a claim for infringement of a design mark no Defendant has ever used"; (2) "[i]nsisting on deposing counsel"; (3) "[c]ontinuing to argue agency theories based on new articles Wilcox knows are inaccurate from its review of the retraction, corporate documents, and sworn testimony"; (4) [c]ontinuing to seek monetary relief even after it failed to hire the expert it claimed was needed for damages calculations"; and (5) "[o]pposing a Motion for Summary Judgment without complying with the Local Rules, including its failure to respond to the Statement of Undisputed Facts." (ECF No. 47 at 14.) Defendants compare this conduct to that of the plaintiffs in *FabriClear, LLC v. Harvest Direct, LLC*, No. CV

20-10580-TSH, 2024 WL 1886032 (D. Mass. Apr. 29, 2024) and *Reply All Corp. v. Gimlet Media, Inc.*, No. 15CV4950WFKPK, 2021 WL 1291103 (E.D.N.Y. Apr. 5, 2021). (ECF No. 36 at 18.)

Wilcox disputes Defendants' characterization of its conduct. (ECF No. 42 at 16–19.) Wilcox first argues that its claims are meritorious and therefore cannot have been made in bad faith. *Id.* at 17. Wilcox then cites its own pre-litigation actions, which included its attempts to resolve the issue "without damages or attorneys' fees." *Id.* Wilcox argues that its continued pursuit of its claims against DiGregorio is justified by a pre-litigation incident where Defendants' counsel at the time apparently identified WDI as a "subsidiary" of DiGregorio. *Id.* at 18. Wilcox finally justifies its attempt to depose Defendants' counsel during litigation as "necessary in order to be able to obtain evidence of Defendants' central factual assertion regarding the independent status of the two Defendants." *Id.* at 19.

Based on its review of the totality of the circumstances, the Court declines Defendants' request to declare this an exceptional case. Wilcox's conduct in this case does not rise to the same level of sanctionable litigation tactics as in *FabriClear* and *Gimlet Media*. While Defendants are clearly frustrated with Wilcox's attempt to depose Defendants' counsel during the winter holidays, its behavior in this case is not so wholly unreasonable as to warrant an award of attorney's fees under 15 U.S.C. § 1117.

15

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment but DENIES Defendants' Request for Exceptional Case Determination. (ECF No. 35.)

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

October 14, 2025